The Honorable Benjamin H. Settle
Hearing Date: July 19, 2013

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, a foreign insurer; and THE TRAVELERS INDEMNITY COMPANY, a foreign insurer,<br><br>                              Plaintiff,<br><br>v.<br><br>DODSON-DUUS, LLC, a Washington limited liability company; HARBOR RESORT HOLDINGS, LLC, a Washington limited liability company; GABE DUUS and JANE DOE DUUS, husband and wife, individually and their marital community; HARBOR RESORT PROPERTIES, INC., a closely-held Washington corporation; MARK DODSON and DESIREE DODSON, husband and wife, individually and their marital community; EDWARD DODSON, JR. and ANN GRIMES-DODSON, husband and wife, individually and their marital community, THE POINT AT WESTPORT HARBOR HOMEOWNERS' ASSOCIATION, a Washington non-profit corporation,<br><br>                              Defendants. | NO.  3:12-cv-05625<br><br>**DEFENDANT THE POINT AT WESTPORT HARBOR HOMEOWNERS' ASSOCIATION'S OPPOSITION TO TRAVELERS' MOTION FOR SUMMARY JUDGMENT** |

I.      **RELIEF REQUESTED**

The Association requests an order denying Travelers' motion on the grounds that:

A.      Travelers unreasonably refused to defend its insureds, Gabe Duus, Mark Dodson, and Edward Dodson (the "Declarant-Appointed Directors"), in the

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 1

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

underlying case based upon its conclusion that the named insured on its policy, the Pointe at Westport Condominium Association (the "Association"), owned the condominium.  This conclusion was based upon no investigation and contradicts the allegations of the complaint, common sense, and directly applicable cases applying Washington law.  As a result, Travelers has forfeited all other coverage defenses and Travelers' insureds are entitled to coverage by estoppel.

B.    Even without a finding of bad faith, Travelers may not introduce new excuses for its unreasonable refusal to defend because: (a) an insurer is "precluded from changing the ground for its denial of coverage" during the course of litigation[1], and (b) Travelers' own complaint in this action alleges that it declined to defend under the CGL policy based upon the "owned property" exclusion.

C.    The motion is premature under FRCP 56(d), and the hearing date should be continued to allow the Association to depose Travelers' adjusters and submit evidence regarding how Travelers actually interpreted the allegations of the underlying complaint, what investigation Travelers' performed, and why Travelers concluded that the Association owned the condominium.

D.    Even if the Court decides to consider Travelers' recently fabricated excuses as to why it could have refused to defend, the Court should deny Travelers' motion because the underlying complaint can be reasonably interpreted—and in fact was interpreted by Travelers—to allege: (1) that Travelers' insureds were liable for breach of their duties as Association directors, and (2) that Travelers' insureds' negligent failure to fulfill their fiduciary obligations resulted in accidental property damage.

## II.    STATEMENT OF FACTS

On September 30, 2010, The Pointe at Westport Harbor Homeowners Association (the "Association") sued Mark Dodson, Edward Dodson, and Gabe Duus (the "Declarant-Appointed Directors" of the Association) alleging that property damage occurred at The Pointe at Westport condominium building as a result of negligent breaches of their fiduciary duties as Association directors.

On November 21, 2011, counsel for the Declarant-Appointed Directors sent the Association's complaint to Travelers with a letter asking Travelers to defend and indemnify the

---

[1]    *Vision One, LLC v. Philadelphia Indem. Ins.*, 174 Wn.2d 501, 505, 520, 276 P.3d 300 (2012).

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 2

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660   FAX:  206-286-2660

1    Declarant-Appointed Directors under "all applicable policies and endorsements."  Dkt. 32-3 p. 3

2    of 3.

3           The endorsements and renewal certificates attached to Travelers' policies identify the

4    Association as the named insured.  Dkt. 32-1 p. 147 of 148, 32-2 p. 2 of 151.  All parties to this

5    action agree that the Association was the named insured on Travelers' policies.  The CGL

6    coverage form provides:

7           Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . .

8

9           The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Dkt. 32-1 p. 82 of 148.

10   SECTION II – WHO IS AN INSURED provides:

11          If you are designated in the Declarations as: . . . An organization other than a partnership, joint venture or limited liability company, you are insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. *Id.* p. 89 of 148.

12

13   The Insuring Agreement provides:

14          We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

15

16          This insurance applies to . . . "property damage" only if: . . . The . . . property damage is caused by an "occurrence" . . . . *Id.* p. 82 of 148.

17          The policy defines an occurrence as follows: "'Occurrence' means an accident, including

18   continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* p. 95

19   of 148.

20          The Exclusions section provides: "This insurance does not apply to: . . . j . . ."Property

21   damage" to . . . [p]roperty you own, rent, or occupy . . . ."  *Id.* at p. 85 of 148.  "You" means the

22   named insured: the Association.  Thus, the owned-property exclusion only bars coverage for

23   damage to property owned by the Association.

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 3

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

On January 30, 2012, Travelers sent a preliminary denial of coverage pointing out in relevant part that:

- "It is alleged that defects resulted in water intrusion and/or other physical damage to the building and other property."  Houser Decl. Ex. A at p. 2.

- "There are multiple allegations and claims made against the Tendering Parties in their capacities as . . . . declarant board members.  The allegations in the complaint are as follows: . . . Eighth Claim – Against . . . Mark Dodson, . . . Edward Dodson, [and] Gabe Duus . . . for Breach of Fiduciary Duty."  *Id.* at p. 3.

- "Under the Eighth Claim, the Association alleges the defendants directly or indirectly controlled the Association's Board of Directors and had a duty to the Association to act in the best interests of the Association.  It is alleged they breached their duties by . . . fail[ing] to identify and correct . . . defects and damage . . . they knew or should have known about . . . which caused additional property damage."  *Id.* at pp. 3-4.

- "Those individuals who are or were directors or 'executive officers' of the Association are an Insured but only with respect to their duties as the director or 'executive officer.  Under this coverage the Tendering Parties would be an insured but only for their duties as a director or officer of the Association."  *Id.* at p. 5.

- "The policy excludes from coverage 'property damage' to property which **the Association owns or occupies** [emphasis added] even if there was an 'occurrence.'  The damages claimed by the Association in this litigation are for defects with the construction of the property and resulting damages to the property **which it owns and occupies** [emphasis added].  These damages are excluded from coverage under **j. Damage to [P]roperty** cited above."  *Id.* at p. 8.

- "It is Travelers' position the commercial general liability coverage afforded by the policies do not provide coverage to the Tendering Parties for this matter including defense and indemnity. . . . Travelers herewith denies commercial general liability coverage to the Tendering Parties including defense and indemnity."  *Id.* at p. 9.

On April 13, 2012, Travelers confirmed its decision that it would not defend the Declarant-Appointed Directors based upon the "owned property" exclusion.  In its denial letter Travelers explained that:

- "Your 1/13/2012 letter confirms for Travelers the Declarant appointed Gabe Duus, Mark Dodson, and Edward Dodson, Jr., as directors to the Association's board up to the time it was turned over to the owners."  Dkt. 32-5 p. 2 of 5.

- "The named insured on the policy is the Association."  *Id.* at p. 3 of 5.

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 4

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

- "The directors and officers identified as and verified as being a director and officer of the Association are Gabe Duus, Mark Dodson, and Edward Dodson, Jr. and for whom Travelers has already issued a preliminary coverage opinion letter dated 1/30/2012." *Id.* at p. 4 of 5.

- "In particular Travelers must deny defense to Gabe Duus, Mark Dodson, and Edward Dodson Jr. based on the owned property exclusion j (1) in the general coverage form of the commercial general liability policy issued to the Association by Travelers for the periods of 12/21/2008 to 12/21/2009 and 12/21/2009 to 12/21/2010." *Id.*

On July 12, 2012, Travelers sued the Declarant-Appointed Directors seeking declaratory relief that Travelers had no duty to defend them in the underlying construction-defect case, and that Travelers' decision was "proper and reasonable under Washington Law." Dkt. 1 at ¶ 5.4. According to Travelers' complaint, Travelers denied the tender of defense "on or about April 13, 2012." *Id.* at 3.18. With respect to the Declarant-Appointed Directors, Travelers' complaint alleges that Travelers "denied the defense . . . based on the owned property exclusion in the Commercial Liability Coverage Form. *Id.* at 3.20.

On September 11, 2012 the Declarant-Appointed Directors attended a mediation in the underlying case and signed a CR2a settlement agreement which called for each defendant to sign a promissory note in the amount of $1.2 million in favor of the Association and, if payment was not made on the notes on demand, to assign to the Association any and all claims against Travelers in satisfaction of the notes. Houser Decl. Ex. B. On or about September 19, 2012 each Declarant-Appointed Director signed a demand promissory note in favor of the Association. Dkt. 31-6 p.14-16 of 16. Thereafter, the Declarant-Appointed Directors refused to pay when the notes were presented for payment, thereby resulting in assignment of their rights against Travelers. Houser Decl. Ex. C.

On October 2, 2012, three months after it sued the Declarant-Appointed Directors, and three weeks after the settlement agreement, Travelers admitted in writing that: "Travelers has

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 5

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1   reconsidered its position set forth in its April 13, 2012 letter and will agree to defend the

2   individual board members that are named as defendants in the underlying case under a full

3   reservation or rights." Dkt. 31-4 p. 4 of 5.

4          In its motion for summary judgment Travelers alleges that it changed its mind and decided

5   to defend because "additional information developed regarding the Underlying Action." Dkt. 30

6   at 5:9-10.  A review of Travelers claim notes [nearly all of which were redacted by Travelers]

7   does not reveal that there was in fact any "additional information," or what it could have been.[2]

8   The allegations of the complaint regarding property damage caused by negligent breaches of

9   fiduciary duty did not change between November 2011 and October 2012.

10          On October 4, 2012 Leonard Flanagan, counsel for the Association, wrote to Travelers to

11  advise that the claims against the Declarant-Appointed Directors had been settled.  Dkt. 31-5 p. 2

12  of 3.  On October 17, 2012, Grant Lingg, counsel for the Declarant-Appointed Directors sent

13  Travelers a letter explaining that the case had been settled and enclosing a copy of the CR2a

14  agreement.  Houser Decl. Ex. B.

15          On June 5, 2013, Travelers wrote another letter to counsel for the Declarant-Appointed

16  Directors indicating that, "Travelers reiterates that it has agreed to defend the breach of fiduciary

17  duty claims alleged against Mark Dodson, Desiree Dodson, Edward Dodson, and Gabe

18  Duus."  Houser Decl. at Ex. K.

19

20

21  _____

22  [2]       As part of its initial disclosures Travelers produced three different versions of its claim notes for this claim.
    Houser Decl. Exs. D, E, and F.  Each is so heavily redacted that it provides no clues as to why Travelers mistakenly
    concluded that the Association owned the condominium or when, why, or how it first realized that the Association

23  did not own any portion of the condominium.  The Association met and conferred with Travelers and explained in
    writing and over the phone why it needed the claim notes and why the attorney-client privilege did not apply.  Houser
    Decl. Ex. H.  Travelers response was that it would not produce the redacted portions of the claim notes without a

24  court order.

DEFENDANT THE POINT AT WESTPORT                    STEIN, FLANAGAN, SUDWEEKS & HOUSER
HARBOR HOMEOWNERS' ASSOCIATION'S                   901 FIFTH AVENUE, SUITE 3000
OPPOSITION TO TRAVELERS' MOTION FOR                SEATTLE, WA 98164
SUMMARY JUDGMENT - 6                               PHONE: 206-388-0660  FAX:  206-286-2660

On June 6, 2013, one day after reiterating its offer to defend the breach-of-fiduciary-duty claims, Travelers filed this motion for summary judgment seeking a ruling that it had no duty to defend based upon three new excuses that had nothing to do with its actual refusal to defend.

### III.     EVIDENCE RELIED UPON

Defendants rely upon the declaration of Daniel Houser filed herewith, the declaration of Eric Neal (Dkt. No. 31), the declaration of Nick D'Agostino (Dkt. No. 32) and the entire court file for this action.

### IV.     ISSUES PRESENTED

1.   Was Travelers' refusal to defend based upon the "owned property" exclusion reasonable?  Answer: No, the policy language, the Washington Condominium Act, cases applying Washington law to the same fact pattern, publicly available property records, and the allegations of the complaint all confirm that the Association never owned any portion of the condominium and that the "owned property" exclusion does not apply.

2.   Has Travelers forfeited all other coverage defenses as a result of its bad faith refusal to defend?  Answer: Yes.

3.   Even if the Court finds no bad faith, should the Court bar Travelers from relying on  new excuses for its refusal to defend that have nothing to do with the actual reason why Travelers refused to defend?  Answer: Yes.

4.   Should the Court grant the Association's 56(d) motion to continue, in order to allow discovery regarding Travelers' investigation, claim handling, interpretation of the underlying complaint, and the true reasons why Travelers refused to defend, changed its mind, and then changed its mind again?  Answer: Yes.

5.   Is Travelers correct that its CGL policy (or Washington public policy) bars coverage for liabilities alleged by one insured against another insured?  Answer. No.

6.   Can the underlying complaint be reasonably interpreted to allege liability for breach of the Declarant-Appointed Directors' duties as Association directors? Answer: Yes.

7.   Can the underlying complaint be reasonably interpreted to allege that the Declarant-Appointed Directors are liable for breach of their fiduciary duties

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 7

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

because of accidental property damage caused their negligent failure to identify and repair defects?  Answer: Yes.

## V.      MOTION TO STRIKE TRAVELERS' NEW COVERAGE DEFENSES

The court should strike Travelers' new excuses for its failure to defend for three reasons. First, the pleadings in this action—Travelers' Complaint, Defendants' Answer, and Defendants Counterclaim—unanimously allege and agree that Travelers refused to defend under the CGL policies because it concluded that the "owned property" exclusion barred coverage.[3]  Absent a motion to amend its Complaint, Travelers has no right to seek declaratory relief regarding other reasons why it could have refused to defend.

Second, Travelers' written explanations for it refusal to defend under the CGL policies state that the named insured on its policies, the Association, owned the condominium building and therefore the "owned property" exclusion applied to bar any possibility of coverage. Travelers' three new excuses have nothing to do with its actual refusal to defend, which was based upon the owned-property exclusion.  The new excuses were first articulated during the course of this coverage litigation.  Thus, even if the Court declines to find bad faith, Travelers is "precluded from changing the ground for its denial of coverage." *Vision One, LLC v. Philadelphia Indem. Ins.*, 174 Wn.2d 501, 505, 520, 276 P.3d 300 (2012)("[C]overage must be determined under the policy language [the insurer] relied upon when it denied coverage," and new arguments first articulated during coverage litigation will not be considered); *See also*, *Mettler v. Safeco Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 8622 (W.D. Wash. Jan. 22, 2013) (declining to consider insurer's new excuses for coverage denial that were not "invoked in [the

---

[3]      Travelers' complaint alleges at paragraph 3.20 that it refused to defend based upon the owned property exclusion.  Defendants' answered paragraph 3.20 as follows: "Answering plaintiff's Complaint at paragraph 3.20, admit and aver that the denial letter, which speaks for itself, identified exclusion 2.j.1 of the so-called "owned property exclusion" as the basis for denial of a defense." Answer (Dkt. No. 19) at ¶ 1.32. See Counterclaims (Dkt. 34) at ¶ 3.1.7.

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 8

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1    insurer's] denial letter," but were first articulated "at some future date under the threat of

2    litigation.").

3        Third, Travelers refusal to defend based upon the "owned property" exclusion was

4    unreasonable. As a result of Travelers' bad-faith refusal to defend it has forfeited all other

5    coverage defenses and the Declarant-Appointed Directors are entitled to coverage by estoppel.

6        The underlying complaint alleged that the declarant, Dodson-Duus, LLC—not the

7    Association—owned the condominium: "[d]eclarant is a single-asset company, and has never

8    held significant assets other than the Project itself, and proceeds from the sale of units at the

9    Project." Dkt. 31-1 p. 4 of 28 at ¶ 2.3. The complaint further alleged that each defendant

10   (including the Declarant-Appointed Directors) "has or had an ownership interest in the Project

11   and/or the sales proceeds from the Project." *Id.* at ¶ 2.12. Nowhere does the complaint allege

12   that the Association ever owned any part of the condominium building. Yet in its letters refusing

13   to defend the Declarant-Appointed Directors Travelers misrepresented that the Association

14   owned the condominium. Houser Decl. Ex. A at 8. Travelers has now abandoned any pretense

15   that its conclusion that the Association owned the condominium (the actual reason why it refused

16   to defend) was accurate, reasonable, or justifiable.

17       Travelers recently made similar "patently false" misrepresentations regarding who owned

18   a condominium building in *Travelers Prop. Cas. Co. of America v. AF Evans Co.* (10-cv-01110-

19   JCC) (W.D. Wash. Dec. 12, 2012) (Dkt. No. 186); Houser Decl. Ex. L at pp. 9-10 and n. 2. In *AF*

20   *Evans*, Travelers attempted to justify its refusal to defend a corporate member of a declarant LLC

21   by misrepresenting that the member owned the condominium and sold units. *Id.* In fact, the

22   declarant owned the condominium. *Id.* In *AF Evans,* Travelers never alleged that the Association

23   owned the condominium.

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 9

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1    Here, the Association never owned or occupied any portion of the condominium building

2    at any time.  A review of publicly available ownership records would have proved that ownership

3    of the condominium units was transferred directly from the declarant, Dodson-Duus, LLC, to

4    individual unit purchasers, and that the Association never owned any of the units.  Houser decl. ¶

5    12 and Ex. M.  A review of the condominium declaration would have revealed that the common

6    elements are collectively owned by the unit owners, not the Association.[4]  A review of the

7    Washington Condominium Act would have revealed that, by definition, the common elements of

8    a condominium are collectively owned by the unit owners, not the Association.  *See* RCW

9    64.34.020(9) (definition of "condominium") (6) (definition of "common element") and (31)

10   (definition of "unit.").  The comments to the Uniform Condominium Act explain that if an

11   Association owned any part of the common elements, then by definition, the project "would not

12   be a condominium."[5]

---

[4]    The declaration allocates ownership of the common elements between the 26 unit owners.  Dkt. 32-6 p. 13 of 53.  The allocated interests identified in schedule B to the declaration are 3.876% for 25 units, and 3.101%  for one unit.  The table reports that the total allocated interests add up to 100%.  *Id.* p. 52 of 53.

[5]    RCW 64.34.020(9) provides that, "'Condominium' means real property, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions.  Real property is not a condominium unless the undivided interests in the common elements are vested in the unit owners, and unless a declaration and a survey map and plans have been recorded pursuant to this chapter."

RCW 64.34.020(9) is based upon Section 1-103(7) of the Uniform Condominium Act which provides a nearly identical definition: "'Condominium' means real property, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions.  Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners."

The comment to UCA 1-103(7) explains that:

Definition (7), 'condominium,' makes clear that, unless the ownership interest in the common elements is vested in the owners of the units, the project is not a condominium.  Thus, for example, if the common elements were owned by an association in which each unit owner was a member, the project would not be a condominium.  Similarly, if a declarant sold units in a building but retained title to the common areas, granting easements over them to unit owners, no condominium would have been created.  Such projects have many of the attributes of condominiums, but they are not covered by this Act.

1       A review of Washington case law and subsequent Federal cases would have revealed that

2   a condominium association neither owns nor occupies any portion of a condominium building

3   and that, as a result, an "owned property" exclusion in a commercial general liability policy

4   issued to an association does not apply to a lawsuit filed by the Association against the declarant-

5   appointed directors of the Association. *Far Northwest Dev. Co., LLC v. Community Ass'n of*

6   *Underwriters of America, Inc.*, 2006 U.S. Dist. LEXIS 79033, *16 (W.D. Wash., October 30,

7   2006) ("The Association did not own or occupy the common elements of the condominium," and,

8   therefore, "the owned property exclusion . . . does not bar coverage for the claims asserted [by the

9   association] against [the declarant-appointed director for breach of fiduciary duty] in his capacity

10  as manager and director of the Association in the underlying state construction defect action.");

11  *Willing v. Community Ass'n of Underwriters of America, Inc.,* 2007 U.S. Dist. LEXIS 48543, *16

12  (W.D. Wash., July 5, 2007) (condominium association's CGL insurer had a duty to defend

13  declarant-appointed directors against association's claim of accidental property damage caused by

14  negligent breach of fiduciary duty).  Unit owners, not the Association, collectively own 100% of

15  a condominium's common elements.  *State Farm v. English Cove Assocs.*, 121 Wn. App. 358,

16  366, 88 P.3d 986 (2004).

17      In the six years since the *Far Northwest* and *Willing* decisions, insurers have regularly

18  defended declarant-appointed association directors who are sued for a negligent breach of

19  fiduciary duty resulting in property damage.  Houser Decl. ¶ 14.  In October 2011, Nancy

20  Kleinrock, an adjuster for Farmers, estimated that her company had undertaken to defend and

21  settle approximately twenty such cases in the past five years.  *Id.* at Ex. N(Kleinrock decl.)

22      An insurer must defend if its policy "conceivably covers allegations in the complaint."

23  *American Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010).  *Id.* at

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 11

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

404. "If there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.* at 404-05.

"The duty to defend arises at the time an action is first brought." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002). The "defense must be prompt and timely." *Id.* at 765. "Once the duty to defend attaches, insurers may not desert policyholders . . . while waiting for an indemnity determination." *Id.* at 761.

If the applicability of a policy exclusion "requires an examination of facts beyond the complaint," (*Id.* at 763) then the insurer "may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Id.* at 761. In determining whether there is a duty to defend, "[a]n insurer has an obligation to give the rights of the insured the same consideration that it gives to its own monetary interests." *Id.* at 761.

"An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *American Best Foods*, 168 Wn.2d at 412-13 (insurer's "refusal to defend . . . based upon an arguable interpretation of its policy was unreasonable and therefore in bad faith"). Here, Travelers relied upon no law, no facts, no investigation, no analysis, and no expert opinion when it refused to defend based upon the patently false proposition that the Association owned the condominium building. Travelers has no explanation whatsoever for its unreasonable misrepresentation and failure to defend. *Compare*, *American Best Food,* 168 Wn.2d at 404-05 (refusal to defend was unreasonable as a matter of law even after insurer obtained a written legal opinion from a qualified attorney citing relevant case law that very likely would have applied to bar coverage); *Compare*, *Tim Ryan Constr., Inc. v. Burlington Ins. Co.*, 2013 U.S. Dist. LEXIS 40720 (W.D. Wash. Mar. 22, 2013) (refusal to defend based upon new interpretation of new additional insured endorsement that favored the insurer's interests was unreasonable as a matter

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 12

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

of law); *Compare*, *Travelers Prop. Cas. Co. of Am. v. AF Evans Co.*, 2012 U.S. Dist. LEXIS 134189 (W.D. Wash. Sept. 19, 2012) (refusal to defend based upon overbroad interpretation of residential construction exclusion was unreasonable as a matter of law).  *Compar*e, *Aecon Buildings, Inc. v. Zurich North America,* 572 F. Supp. 2d 1227, 2008 U.S. Dist. LEXIS 59515 (refusal to defend based upon speculative assumptions and no real investigation regarding timing of property damage and completion of insured's work was unreasonable as a matter of law).

In addition, Travelers is liable for insurance bad faith because it did not treat the interests of its insureds as equal to its own when it sued the Declarant-Appointed Directors in an attempt to justify its ongoing refusal to defend them.  *See Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 920, 169 P.3d 1 (2007).  Travelers could have followed the procedure described by numerous decisions of the Supreme Court of Washington to defend its insureds and then file a separate action for declaratory relief regarding coverage.  *See, e.g.*, *VanPort Homes*, and *American Best Foods*.  Instead, Travelers refused to defend and also sued its own insureds.

As a result of Travelers' bad-faith conduct it has forfeited all other coverage defenses including the new excuses articulated in the pending motion.  *Kirk v. Mt. Airy Insurance Company*, 134 Wn.2d 558, 564, 951 P.2d 1124 (1998) ("Once the insurer breaches an important benefit of the insurance contract, harm is assumed, [and] the insurer is estopped from denying coverage."); *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 765-66, 58 P.3d 276 (2002) ("[A]n insurer that refuses or fails to defend in bad faith is estopped from denying coverage"); *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 9-10, 206 P.3d 1255 ("The insurer acting in bad faith forfeits defenses to the claim tendered and handled in

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 13

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1  bad faith, including the defense that the claim was never covered at all"), *review denied*, 167

2  Wn.2d 1007, 220 P.3d 209 (2009).

3  **VI.    TRAVELERS NEW EXCUSES FOR ITS FAILURE TO DEFEND ARE**
4  **MERITLESS**

5       Travelers now alleges three new excuses that have nothing to do with its actual reason for

6  refusing to defend: (1) that its CGL policies exclude coverage for liability claims brought by one

7  insured against another insured (or that only liabilities to unrelated third-parties are covered); (2)

8  that the Declarant-Appointed Directors were not insureds because the complaint did not allege

9  that they were liable in their capacities as Association directors; and (3) that the complaint alleged

10  only expected damage from intentional conduct and did not allege any accidental damage or

11  negligent acts or omissions.

12       Even if the court considers these new excuses it should reject them as meritless.  First,

13  Travelers' CGL policies do not exclude coverage for liability claims brought by one insured

14  against another.  Nor do the CGL policies limit coverage to liabilities related to the conduct of the

15  insured's business.  Nor do they restrict coverage to liabilities incurred to any particular class of

16  persons or entities.  As explained above, other courts and other insurers have found a duty to

17  defend virtually identical allegations under Washington law based upon the same factual scenario.

18  *See Far Northwest* and *Willing*.

19       In Washington there is no public policy against liability insurance covering a lawsuit filed

20  by one insured against another insured.  *Washington Public Utility v. Public Utility District No. 1*,

21  112 Wn.2d 1, 771 P.2d 701 (1989).  "If insurers do not want to provide coverage for such claims

22  an exclusion can be easily written into the contract."  *Id.* at 13.  Travelers drafted such an

23  exclusion in its D&O coverage form: "The insurance provided by this endorsement does not

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 14

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1   apply to . . . i. Any claim or "suit" made by an insured against another insured."  Dkt. 32-1 p. 108

2   of 148.  Thus, Travelers' D&O endorsement provides no coverage for the Association's claims

3   against the Declarant-Appointed Directors.  *But Travelers' CGL policies contain no such*

4   *exclusion*.

5        Travelers' second argument, that the complaint did not allege liability incurred in the

6   Declarant-Appointed Directors' capacities as Association directors, makes no sense.  A liability

7   insurer has a putative contractual relationship with an alleged insured.  *Black v. Grange Ins.*

8   *Assoc.*, 2009 U.S. Dist. LEXIS 108138 (W.D. Wash.) (insurer breached its duty to defend where

9   ambiguous complaint could have been construed to allege that defendant was a "farm hand"

10   employed by the named insured).  A liability insurer has a duty to defend an alleged insured if the

11   complaint, construed liberally, alleges facts which could, if proven, impose liability upon the

12   insured within the policy's coverage. *Black,* 2009 U.S. Dist. LEXIS 108138 at *15-19.

13        Here, Travelers even admitted at the outset, in writing, that the "Declarant-Appointed

14   Directors" had been sued "in their capacities as . . . declarant board members" of the Association,

15   that the eighth claim in the lawsuit alleged liability for breach of fiduciary duty, and that "under

16   this coverage the Tendering Parties would be an insured but only for their duties as a director or

17   officer of the Association.  Houser Decl. Ex. A at pp. 3-5.  Accordingly, Travelers' second new

18   rationale fails.

19        Travelers' third argument, that the complaint alleged only expected or intended damage, is

20   likewise without merit.  The underlying complaint alleged liability for breach of fiduciary duty

21   for accidental property damage caused by the Declarant-Appointed Directors' negligent failure to

22   act.  The claim for breach of fiduciary duty contains the following allegations:

23

24

DEFENDANT THE POINT AT WESTPORT        STEIN, FLANAGAN, SUDWEEKS & HOUSER
HARBOR HOMEOWNERS' ASSOCIATION'S       901 FIFTH AVENUE, SUITE 3000
OPPOSITION TO TRAVELERS' MOTION FOR       SEATTLE, WA 98164
SUMMARY JUDGMENT - 15        PHONE: 206-388-0660  FAX:  206-286-2660

- "[T]he Association has the responsibility to maintain, repair and replace the common elements and other portions of the Project and the duty to repair, replace and restore damage to the Project." Dkt. 31-2 p. 22 of 28 at ¶ 11.2.

- The Declarant-Appointed Directors "had the duty to cause the Association to act in a reasonable and prudent manner and in the best interests of the Association and its unit owner members." *Id.* at ¶ 11.3.

- The Declarant-Appointed Directors "breached their fiduciary duty by . . . omissions, including . . . failing to identify and correct or assess Declarant for the defects and damage to the Project that they knew **or should have known** about . . . which has caused additional property damage." *Id.* at ¶ 11.5. (emphasis added).

The claim for breach of fiduciary duty incorporated the prior allegations of the complaint (*Id.* at ¶ 11.1) such as the allegation that "the defects . . . have allowed substantial water intrusion." *Id.* at ¶ 7.3.

These allegations can be reasonably interpreted to mean that the Declarant-Appointed Directors had a fiduciary duty as Association directors to investigate (or take some other action) to identify and repair defects before they resulted in property damage to the building; that they negligently failed to investigate or act, that they failed to discover defects, and that, as a result, unknown and accidental water intrusion and property damage occurred.

In addition to water intrusion, subsequent investigation has revealed that defective construction has allowed salty sea air (the condo is adjacent to the Pacific ocean in Westport) to contact internal structural steel components which has resulted in substantial corrosion and property damage. Houser Decl. Ex. P.

Travelers' argument that it would have been impossible for the Declarant-Appointed Directors to actually be held liable for a negligent breach of fiduciary duty is incorrect. *Senn v. Northwest Underwriters, Inc.*, 74 Wn. App. 408, 875 P.2d 637 (1994 (director liable for breach of fiduciary duty for negligent failure to discover and prevent ongoing improper loans to another director).

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 16

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

## VII.    FRCP 56(d) MOTION TO CONTINUE

To date, Travelers had declined to produce the relevant portions of its claim file and claim notes.  The file produced by Travelers is so heavily redacted that it provides no useful information as to what, if any, investigation Travelers performed, why Travelers refused to defend, why Travelers changed its mind and offered to defend, or why Travelers changed its mind yet again and invented three new excuses for its refusal to defend.  In addition, Travelers has refused to produce its adjusters to testify at depositions until mid-August 2013.  Houser Decl. ¶¶ 6-9 and Exs. G-J.

Pursuant to CR56(d), the Association requests that if the court does not deny this motion outright, that it continue the hearing date for Travelers' motion until early October to allow time for the Association to depose Travelers' adjusters and compel Travelers to produce its claim file and claim notes.  Travelers' attempts to hide all relevant claim-handling activities behind a veil of attorney-client privilege is particularly unreasonable and egregious in light of the Supreme Court of Washington's recent decision in *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 689-90, 295 P.3d 239 (2013), which holds that "there is no attorney-client  privilege relevant between the insured and the insurer in the claims adjusting process, and . . . the attorney-client and work product privileges are generally not relevant."

## VIII.   AUTHORITY AND ARGUMENT

1.    **Other courts and other insurers have found a duty to defend declarant-appointed directors of condominium associations against the same allegations of breach of fiduciary duty.**

The facts of this case are remarkably similar to *Far Northwest Dev. Co., LLC v. Community Ass'n of Underwriters of America, Inc.,* and *Willing v. Community Ass'n of Underwriters of America, Inc.,* two cases decided in 2006 and 2007 regarding CGL coverage for

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 17

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1   property damage to a condominium alleged to have been caused by a declarant-appointed

2   director's negligent breach of his fiduciary duties.

3          In *Far Northwest* a condominium association sued its original officer and director, who

4   had been appointed by the condominium declarant, for the cost of repairing property damage

5   caused by the director's negligent breaches of fiduciary duty (failure to identify and repair defects

6   before they caused damage).  The director tendered a claim to CAU under the Association's

7   general liability policy.  CAU refused to defend based upon the owned property exclusion, taking

8   the position that the Association owned the common elements of the condominium.  *Far*

9   *Northwest Dev. Co., LLC v. Community Ass'n of Underwriters of America, Inc.*, 2006 U.S. Dist.

10  LEXIS 79033 (W.D. Wash., October 30, 2006) at *3.

11         The director settled with the Association, agreed to a stipulated judgment and assigned to

12  the Association his claims against CAU.  Shortly after the settlement CAU offered to defend the

13  director—just as Travelers did here.

14         Judge Martinez granted the Association's motion for summary judgment that CAU had

15  breached its duty to defend.  The court explained that the "owned property" exclusion bars

16  coverage for property damage to property "you" own.  The policy defined "you" to mean the

17  Association.  Thus, the exclusion only applied to property damage to property owned by the

18  Association.  *Id.* at *10-12.  The court went on to explain that CAU had misunderstood the

19  holding in *State Farm v. English Cove Assocs.*, 121 Wn. App. 358, 366, 88 P.3d 986 (2004) (unit

20  owners, not the Association, collectively own 100% of a condominium's common elements).  *Id.*

21  at * 15.  The court concluded that, "the Association did not own or occupy the common elements

22  of the condominium," and, therefore, "the owned property exclusion. . . does not bar coverage for

23

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 18

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1   the claims asserted against [the declarant-appointed director] in his capacity as manager and

2   director of the Association in the underlying state construction defect action." *Id.* at \*16.

3           Thereafter the parties filed cross motions for summary judgment.  The court explained

4   that "the plaintiff in the underlying action alleged that [the director] negligently failed to perform

5   a number of acts." *Far Northwest*, 2007 U.S. Dist. LEXIS 28355 at \* 14.  In addition, "the

6   plaintiffs in the underlying action alleged that property damage caused by an occurrence took

7   place."  *Id.*  Thus, CAU had a duty to defend the declarant-appointed director.  *Id.* [6]

8

9           In *Willing v. Community Ass'n of Underwriters of America, Inc.,* 2007 U.S. Dist. LEXIS

10  48543 (W.D. Wash., July 5, 2007) a condominium association sued its original officers and

11  directors, who had been appointed by the condominium declarant, alleging that the condominium

12

_____

13  [6]      On the other hand, the court ruled that CAU had no duty to indemnify the director because the alleged breaches of fiduciary duty—"failure to disclose, failure to investigate, [and] failure to maintain and repair the

14  condominium"—did not cause the property damage alleged in the complaint." *Id.* at \*15-16.
    On appeal, the Ninth Circuit reversed the finding of no causation and no duty to indemnify in an extremely terse

15  unpublished decision:

16           The Association argues on appeal that the district court erred by finding no coverage in light of
             undisputed evidence that [the declarant-appointed director's] failure to investigate and repair
17           construction defects, while he acted as the association's director, caused water damage to the
             property. . . . We agree with the Association's causation argument.  The undisputed evidence
18           establishes that [the declarant-appointed director's] acts, as the sole officer and director of the
             Association, caused some of the property damage.  As a result, his acts, if merely negligent, were
             covered under the policy.  *Far Northwest*, 2008 U.S. App. LEXIS 22580.
19
             On remand, Judge Martinez granted summary judgment that CAU had no duty to indemnify because the
20  director expected and intended the property damage that resulted from his failure to investigate and repair
    construction defects.  *Far Northwest*, 2009 U.S. Dist. LEXIS 34521 at \*8.  After reciting evidence that the director

21  "chose to ignore [construction defects] in order to promote his own monetary interests" (*Id.* at \* 12) the court
    concluded that: "Simply put, the harm was obvious in this case.  [The director's] legal argument that he was simply

22  'negligent' is flatly rejected.  The damage was unequivocally 'expected or intended' from the standpoint of the
    insured, thereby precluding coverage."  *Id.* at \*13.
    On a second appeal the Ninth Circuit affirmed that CAU had no duty to indemnify, explaining that "the damage

23  resulting from [the director's] actions was not an accident" because the director had admitted that "he turned a blind
    eye to problems both during and after construction because he was worried he might lose additional money on the

24  project [in this role as the developer]."  *Far Northwest*, 362 Fed. Appx. 861, 862-63, 2010 U.S. App. LEXIS 1483.

1    building was damaged by water intrusion as a result of the directors' failure to repair defects in

2    violation of their fiduciary duties to the unit owners.

3         The directors tendered a claim to CAU under the Association's general liability policy.

4    CAU refused to defend based upon the owned property exclusion, taking the position that the

5    Association owned the common elements of the condominium.  In addition, CAU argued that the

6    complaint did not allege an occurrence.

7         The owned property exclusion applied to property "you" own.  "The parties agree[d] that

8    the term "you" [was] defined [in CAU's policy] and refer[ed] only to the Association.  Judge

9    Lasnik cited *Far Northwest* for the proposition that "[t]he Association does not hold title to the

10   property. In fact, Washington law states that the common elements are owned solely by a

11   condominium's unit owners."  Thus, the court concluded that the owned property exclusion did

12   not apply.  *Id.* at *16.

13        The court also rejected CAU's argument that "the complaint in the underlying litigation

14   does not allege 'property damage caused by an occurrence' against [the declarant-appointed

15   directors] in their capacity as directors."  *Id.* at *8.  The court explained that, in fact, CAU's

16   30(b)(6) designee understood that the complaint alleged that the directors' breaches of their

17   fiduciary duties resulted in property damage.  As a result, CAU had a duty to defend.

18        Here, Travelers makes no attempt to argue that it was reasonable for it to refuse to defend

19   based upon the exact same position (that is, that the Association owns or occupies the

20   condominium) that the *Far Northwest and Willing* courts conclusively rejected six years ago.

21        In October 2011, Nancy Kleinrock, an adjuster for Farmers and other insurers, filed a

22   declaration estimating that she had directed that declarant-appointed directors be defended and

23

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 20

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

paid settlements on behalf of declarant-appointed directors in approximately 20 such claims in the past five years.  Houser Decl. Ex. N.

2.     The underlying complaint can be reasonably interpreted to allege liability for breach of the Declarant-Appointed Directors' duties as Association directors.

The Association is the named insured on Travelers' policies.  The Association is an organization other than a partnership, joint venture, or LLC.  Thus, Travelers' policies also cover the Association's directors as "insureds" but "only with respect to their duties as [Association] officers or directors."  The complaint alleged that the Declarant-Appointed Directors were liable for breaching their fiduciary duties as Association directors.  The allegation clearly relates to the Declarant-Appointed Directors duties as Association directors.  Thus, Travelers had a duty to defend the Declarant-Appointed Directors against this allegation.

Travelers relies primarily on *Milazo v. Gulf Ins. Co.*, 224 Cal. App.3d 1528, 1537-38 (1990) to support its argument that the Declarant-Appointed Directors were not "insured" and were not entitled to a defense.  In *Milazo* the named insured was a partnership.  The partnership sued an individual partner (Mr. Milazo) for misappropriating partnership assets and "destroying the partnership's opportunity to remain in business."  Mr. Milazo had insured status under the partnership's CGL policy but only "with respect to his liability [as a partner]."  *Id.* at 1536.  The complaint against Mr. Milazo alleged acts and liabilities both in his capacity as a partner and in his capacity as an individual.  The CGL insurer defended Mr. Milazo.  The jury returned a verdict against Mr. Milazo.

In subsequent coverage litigation the court found that Mr. Milazo had been held liable only as an individual and not as a partner.  The mere fact that Mr. Milazo was liable for breaching his fiduciary duties did not mean that he had incurred liability as a partner.  *Id.* at 1538.  When

1   Mr. Milazo misappropriated partnership assets he was not acting in his capacity as a partner.

2   "There can be no partnership liability for such misconduct." *Id.* at 1539.  Thus, the court held

3   that "the coverage provided to Milazo . . . with respect to his liability *as a partner* is not available

4   to indemnify him." *Id.* at 1539.

5       The court did not address whether the insurer had a duty to defend Mr. Milazo.[7]  Here,

6   unlike *Milazo,* the central dispute relates to Travelers' *failure to defend* the Declarant-Appointed

7   Directors.  Applying Washington law, Travelers had a duty to defend such an alleged insured.

8   *Black v. Grange Ins. Assoc.*, 2009 U.S. Dist. LEXIS 108138 (W.D. Wash.).

9       In addition, the "Who Is An Insured" language in Travelers' policy is broader than the

10  language at issue in *Milazo*.  Here, insured status is not limited to the Declarant-Appointed

11  Directors "liability" as directors, but extends to all "duties" as directors.  There is no requirement

12  that the Declarant-Appointed Directors must be held "liable" for acting in their capacity as

13  directors in order to qualify as insureds.  Under Travelers' policies the Declarant-Appointed

14  Directors have coverage for breach of their "duties" as Association directors (regardless of who

15  they acted for).

16      The same language used in Travelers' policies (directors have insured status with respect

17  to their "duties as directors") has been construed (applying Washington law) to trigger a CGL

18  _____

19  [7]       Travelers does cite two unpublished decisions that applied California law to address the duty to defend
    partners who were insured only with respect their  "liability as a partner."

20          In *Rains v. American States Ins. Co.*, 1993 U.S. App. LEXIS 10606 (9th Cir. 1993) (unpublished) one former
    law partner sued another for defamation.  The partner was an insured under the former partnership's policy but only

21  with respect to his liability as a partner.  The court explained that coverage was limited to liability as a partner.
    "Defamation of other partners fell outside the conduct of the partnership."  *Id.* at *2.  The complaint alleged "conduct
    wholly outside the scope of partnership duties giving rise to partnership liabilities."  Thus, the insurer had no duty to

22  defend.
           In *Dovbish v. Maryland Cas. Co.*, 1994 U.S. App. LEXIS 22669 (9th Cir. 1994) (unpublished) a corporation
    sued its former director alleging that after he was removed as a director he engaged in trade libel and intentional

23  interference with economic advantage.  The former director sought coverage under the corporation's general liability
    policy.  The policy only covered liability "arising out of the conduct of the [corporation's] business."  *Id.* at *4.  The
    allegations of liability against the former directors did not relate to any conduct of the corporation's business.  Thus,

24  there was no possibility of coverage and no duty to defend.

DEFENDANT THE POINT AT WESTPORT                    STEIN, FLANAGAN, SUDWEEKS & HOUSER
HARBOR HOMEOWNERS' ASSOCIATION'S                   901 FIFTH AVENUE, SUITE 3000
OPPOSITION TO TRAVELERS' MOTION FOR                SEATTLE, WA 98164
SUMMARY JUDGMENT - 22                              PHONE: 206-388-0660  FAX:  206-286-2660

insurer's duty to defend declarant-appointed directors against a condominium association's allegations of a negligent breach of fiduciary duty. *See Far Northwest* and *Willing*. Another insurer, Farmers, has repeatedly interpreted the same policy language to trigger a duty to defend at least 20 Washington cases involving the same allegations in the same factual and procedural context. Houser Decl. ¶¶ 14-16 and Exs. N (Kleinrock decl.) and O (Farmers' policy language).

The other out-of-state cases cited by Travelers are factually distinct and irrelevant.[8]

## IX.    CONCLUSION

Travelers' refusal to defend the Declarant-Appointed Directors was based upon its unreasonable conclusion that the Association owned the condominium. The underlying complaint alleged that the declarant—not the Association—owned the condominium. In any case, it is impossible under Washington law for an association to own a condominium. Travelers' position was rejected on the exact same facts six years ago in *Far Northwest* and *Willing*.

Travelers' position is so unreasonable that it has not even attempted to explain itself, and it has redacted the relevant portions of its claim file. Because Travelers refused to defend in bad faith the Declarant-Appointed Directors are entitled to coverage by estoppel and Travelers has

---

[8]    *Olson v. Federal Ins. Co.*, 219 Cal. App.3d 252, 264 involved a proxy battle for control of a corporation. The director sought coverage for attorneys' fees under a D&O policy. The policy covered "wrongful acts." The court found no wrongful acts and therefore no coverage.

In *Winther v. Valley Ins. Co.* 140 Or. App. 459, 915 P.2d 1050 (1996) a partner sued a former partner for slander and conversion. The policy covered personal injuries "arising out of the conduct of [the partnership's] business." The partner had insured status, but "only with respect to the conduct of your business." The alleged personal injuries did not arise out of the conduct of the business.

In *Farr v. Farm Bureau Ins. Co. of Nebraska*, 61 F.3d 677, 681 (8th Cir. 1995) a corporation filed counterclaims against its minority shareholders and former directors for "act[ing] to cripple [the corporation] financially and then misrepresenting [the corporation's] financial condition to a potential purchaser." *Id.* at 680. The alleged acts had nothing to do with the former directors duties as directors of the corporation.

*First Mercury Syndicate, Inc. v. New Orleans Private Patrol Service, Inc.*, 600 So.2d 898, 901 (La. App. 1992) involved a shareholder derivative action alleging officers "paying themselves excessive compensation for performing little or no work, placing family members on the . . . payroll . . ., raiding corporate funds and removing large sums of money from corporate accounts for the benefit of themselves." *Id.* at 902. The court explained that "it would violate public policy [set forth in Louisiana insurance statutes] to allow indemnification for such wrongdoing on the part of the insured." *Id.*

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 23

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660

1  forfeited all other coverage defenses.  If the Court believes that additional evidence of Travelers'

2  bad faith should be considered in the context of this motion, then it should delay the hearing date

3  pursuant to FRCP 56(d) to allow production of the claim file and depositions of Travelers

4  adjusters.

5        Even if the Court declines to find bad faith the Court should strike Travelers' new excuses

6  for its refusal to defend because they were first articulated during coverage litigation and were not

7  relied upon in Travelers' letters denying coverage.  *Vision One.*

8        In any case, Travelers' new excuses do not provide a valid reason why Travelers could

9  have refused to defend.  Indeed, Travelers itself concluded that absent reliance on the owned-

10  property exclusion, it had a duty to defend.  The *Far Northwest* and *Willing* courts both applied

11  Washington law to find a duty to defend the same allegations, in the same context, based upon the

12  same policy language.  Thus Travelers could not, acting in good faith, have relied on the owned

13  property exclusion.

14        DATED this 15th of July, 2013.

15                     STEIN, FLANAGAN, SUDWEEKS & HOUSER, PLLC

16                     ___/s/ Daniel S. Houser_____
                   Leonard Flanagan, WSBA 20966

17                     Justin Sudweeks, WSBA 28755
                   Daniel S. Houser, WSBA 32327

18

19                     Attorneys for Counterclaimants The Pointe at Westport
                   Harbor Homeowners' Association, Gabe Duus, Mark

20                     Dodson, and Edward Dodson

21

22

23

24

DEFENDANT THE POINT AT WESTPORT
HARBOR HOMEOWNERS' ASSOCIATION'S
OPPOSITION TO TRAVELERS' MOTION FOR
SUMMARY JUDGMENT - 24

STEIN, FLANAGAN, SUDWEEKS & HOUSER
901 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98164
PHONE: 206-388-0660  FAX:  206-286-2660